UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KRISHNA A. MUHAMMAD                                          CIVIL ACTION
D/B/A THE BATON ROUGE PEANUT
FACTORY AND THE LOUISIANA                                    NO. 08-249-JJB
PEANUT FACTORY, LLC

VERSUS

COMPASS GROUP USA, INC.

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the court on a Motion for Partial Summary Judgment filed by Plaintiff, Krishna A. Muhammad d/b/a the Baton Rouge Peanut Factory and the Louisiana Peanut Factory, LLC ("Plaintiff") (Doc. 32). Defendant, Compass Group USA, Inc., ("Compass") has filed an opposition brief (Doc. 40). Jurisdiction exists pursuant to 28 U.S.C. § 1332. There is no need for oral argument.

### BACKGROUND

Krishna A. Muhammad, Plaintiff and Subcontractor, entered into an operating agreement on September 7, 2007, with Defendant Compass to sell assorted pre-packaged peanuts at LSU home football games during the 2007 season. The actual language of the operating agreement is not in dispute. The "Terms of the Agreement" section of the operating agreement states, in pertinent part:

1

>Compass shall permit the Subcontractor to operate at___**Tiger Stadium, inside and outside**___(the "Designated Premises") at _____ [identify venue] (the "Venue") for each specified concessions event for a term commencing on___Sept 8, 2007___and ending___Nov. 23, 2007_____. **Compass shall have the right, in its sole discretion, to determine the location of the Designated Premises, and to relocate the Designated Premises to other space at the Venue.** It is the intent and understanding that this agreement will be for the duration of a specific sport's season. (emphasis added)

Plaintiff believes that pursuant to the terms of the agreement, he and his employees were permitted to operate both inside and outside of Tiger Stadium. As such, Plaintiff states that he made business preparations necessary to sell peanuts inside and outside the stadium for the first couple of home football games, including activating a team of fundraising high school students to help with peanut sales. However, Plaintiff claims, Compass did not permit Plaintiff or his employees meaningful entrance into the stadium to sell peanuts at the first game on September 8, 2007, as Compass gave Plaintiff only three passes to enter Tiger Stadium, nor did Compass permit their entrance at subsequent home games thereafter. Plaintiff additionally claims that Compass breached its contract in bad faith as Compass stood to lose money if it let Plaintiff and his employees sell peanuts inside Tiger Stadium.

Defendant Compass argues that the operating agreement in question is a form contract, and that this same form contract is used by Compass in nearly all of its contracts with its sub-vendors. Specifically, Compass argues that in virtually all of its football season contracts, the "Tiger Stadium, inside and

outside" language is included, regardless of whether the specific subcontractor is supposed to sell his products inside, outside, or both inside and outside Tiger Stadium.  Additionally, Compass argues, to insure that no doubt exists regarding control of the premises and sales locations, the contract specifically provides (as cited above), "Compass shall have the right, in its sole discretion, to determine the location of the Designated Premises, and to relocate the Designated Premises to other space at the Venue."  Furthermore, Compass argues, Plaintiff was nonetheless allowed into Tiger Stadium in every home football game in 2007, despite the fact that it was not anticipated in the first game, and despite the fact that he failed to meet known prerequisites and requirements before sending employees into Tiger Stadium.

## LAW AND ARGUMENT

**I.      Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled  to a judgment as a matter of law."[1] The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.[2]

---

[1] Fed. Rule Civ. P. 56(c).
[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The United States Fifth Circuit has repeatedly held that unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.[3] Furthermore, mere statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant.[4] A nonmovant survives a motion for summary judgment, without countering movant's showing, where movant's affidavit sets forth only ultimate facts or conclusions.[5]

## II.     Plaintiff has Failed to Show Breach of Contract

Plaintiff believes that the terms of the operating agreement are clear and unambiguous, and that pursuant to these terms, he and his employees should have been allowed to sell peanuts inside and outside Tiger Stadium at home football games during the Fall 2007 football season. As such, Plaintiff argues that when Compass declined to permit Plaintiff and his employees into Tiger Stadium to sell peanuts, it breached its contract, and that partial summary judgment on this issue should be rendered. The Court disagrees.

While Plaintiff correctly contends that the operating agreement is clear and unambiguous, his interpretation of the "Terms of the Agreement" section of the agreement is not. The agreement very clearly states that "Compass shall have the right, in its sole discretion, to determine the location of the Designated Premises, and to relocate the Designated Premises to other space at the Venue."

---

[3] *See, e.g., Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[4] *Id.* at 1221.
[5] *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 138-39 (5th Cir. 1973).

It is exactly this right that Compass invoked when it informed Plaintiff that the two locations where he was to sell his peanuts were both located outside the stadium.[6]

In short, the contractual language is clear.[7] Compass had the sole right to determine whether Plaintiff could sell his peanuts either inside or outside the stadium.

### III.   There was No Bad Faith Breach

As Plaintiff is unable to establish his breach of contact claim, he necessarily fails to show any bad faith breach as well.[8]

---

[6] Doc. 40-6, Wallace Affidavit, Exhibit "B."

[7] When a clause in a written contract is clear and unambiguous, as is the case here, the meaning and intent of the parties to the contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parole evidence. *See, e.g., Amoco Production Co. v. Fina Oil & Chemical Co.,* 670 So.2d 502, 511 (La. App. 1st Cir. 1996). Nonetheless, even if this Court were to take parole evidence into account, Plaintiff's claim still fails. As can be seen in the record, virtually every single subcontract with Compass for the Fall 2007 football season contains the same "inside and outside Tiger Stadium" language (Doc. 40-4, Exhibit 1, *in globo* ( 15 Operating Agreements) to Exhibit "A") (Affidavit of David Heidke), including the contracts of five subcontractors who each knew he would be selling his products only outside the stadium. (Doc.40-3, Heidke Affidavit, Exhibit "A"). Additionally, in over six years of using these contracts and over 100 subcontracts having been executed, not a single person other than Plaintiff has ever suggested that Compass did not allow him to operate at the location(s) agreed upon. *Id*. Furthermore, the only evidence Plaintiff seeks to use as to why Compass should have specifically stated in the agreement that it intended for Plaintiff to sell only outside Tiger Stadium is Compass' agreement with Community Coffee. However, the operating agreement with Community Coffee is clearly unique, as it involved the operation of a "trolley at the outside area of Tiger Stadium…" (Doc. 40-4, Operating Agreement with Community Coffee). Nowhere in Plaintiff's briefing is it suggested that he needed a trolley, or any similarly large apparatus to sell his peanuts, and as such, the agreement with Community Coffee is clearly distinguishable from the agreement at hand.

[8] While Plaintiff's only contention in support of his proposition of bad faith is that Compass declined to allow Plaintiff into Tiger Stadium because it would lose sales of its own peanuts, this allegation, in and of itself, is flawed. As Plaintiff's deposition (Doc. 32-4, Muhammad Deposition, Exhibit "D," pp. 190-191), along with the affidavits of David Heidke and Larry Wallace reflect (Doc. 40-3, Affidavit of David Heidke, Exhibit "A;" Doc. 40-6, Affidavit of Larry Wallace, Exhibit "B"), Plaintiff was allowed into Tiger Stadium to sell his peanuts in every home football game he attended in 2007, despite the fact that his doing so was not anticipated in the first game, and despite the fact that he failed to meet known prerequisites and requirements before sending employees into Tiger Stadium. Before the start of the 2007 football season, Plaintiff was specifically advised that he could not sell roasted peanuts inside Tiger Stadium and was directed to set up his tents to sell his peanuts at two locations outside the stadium. (Doc. 40-6, Wallace Affidavit, Exhibit "B."). Nonetheless, Plaintiff was informed at a pre-season meeting, along with all other Compass subcontractors, of the specific requirements for those who were to sell their goods inside the stadium. Specifically, Plaintiff was informed that the inventory was to be counted, maintained and stored inside Tiger

**CONCLUSION**

Accordingly, Plaintiff's Motion for Partial Summary Judgment (Doc. 32) is hereby DENIED.

Signed in Baton Rouge, Louisiana, on August 4, 2009.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

Stadium at a specific location, (Doc. 32-6, Exhibit D-2, Item Nos. 17 and 18) and that any person selling goods inside Tiger Stadium was required to provide to Compass prior to the game a list of employees who would be selling for the subcontractor. (Doc. 32-6, Exhibit D-2, Item 11).  Though he met neither of these requirements, Compass still allotted Plaintiff three passes to go inside Tiger Stadium to sell his peanuts during the September 8, 2007 game. (Doc. 32-4, Muhammad Deposition, Exhibit "D," pp. 190-191).  Plaintiff further testified that he was provided thirty passes to sell inside the stadium during the second game.  *Id.*  After the third game of the season, however, Muhammad quit showing up to the games altogether. (Doc. 40-3, Affidavit of David Heidke, Exhibit "A"; Doc 40-6, Affidavit of Larry Wallace, Exhibit "B.").  Despite Compass' repeated efforts to work with Plaintiff and to allow him and his employees into Tiger Stadium to sell his peanuts, an endeavor Plaintiff was not contractually entitled to, Plaintiff failed to abide by these minimal requirements asked of him.  In short, there is no evidence of bad faith.